IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

BETTY J. HOLUB                                                                                          PLAINTIFF

v.                                      Civil No. 09-2156

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                                   DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Betty Holub, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.   Procedural Background:**

The plaintiff filed her application for DIB on January 2, 2008, alleging an onset date of December 12, 2007, due to degenerative disk disease ("DDD") of the lumbar spine, DDD of the thoracic spine, a herniated disk, migraine headaches, depression, severe pain, and bilateral carpal tunnel syndrome. Tr. 39, 85-92, 104, 115, 124, 142, 160. Her applications were initially denied and that denial was upheld upon reconsideration. Tr. 34-35. Plaintiff then made a request for a hearing by an Administrative Law Judge ("ALJ"). An administrative hearing was held on April 7, 2009. Tr. 7-33. Plaintiff was present and represented by counsel.

At this time, plaintiff was 48 years of age and possessed a high school education. Tr. 11. Plaintiff had also completed vocational technical training and held a license as a Licensed

Practical Nurse ("LPN"). She had past relevant work ("PRW") experience as a lab technician, a nurse, and a medical transcriptionist. Tr. 12-15, 105, 134.

On August 13, 2009, the ALJ found that plaintiff's DDD of the lumbar spine and depression were severe, but did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Tr. 41. After partially discrediting plaintiff's subjective complaints, the ALJ determined that plaintiff retained the residual functional capacity to perform light work involving frequent pushing and pulling with the lower right extremity, occasional pushing/pulling with the lower left extremity, frequent postural limitations, and no transactional interaction with the public. Tr. 43. The ALJ also concluded that Plaintiff could not climb ladders, ropes, or scaffolds. With the assistance of a vocational expert, the ALJ found plaintiff could perform work as a laundry worker, bench assembler, and hand packager. Tr. 46-47.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on November 17, 2009. Tr. 1-3. Subsequently, plaintiff filed this action. ECF No. 1. This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. ECF No. 11, 12.

## II.   **Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d

964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national

3

economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. § § 404.1520, 416.920 (2003).

### III. Discussion:

Of particular concern to the undersigned is the ALJ's RFC assessment. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

In the present case, records indicate that Plaintiff was suffering from DDD of the lumbar spine, DDD of the thoracic spine, osteoarthritis, right glenohumeral bursitis, and right lateral epicondyle. Tr. 201, 212, 213, 217, 220, 221, 224. In January 2004, Plaintiff was diagnosed

with right lateral epicondylitis and right glenohumeral bursitis. Tr. 224. An examination revealed tenderness in the right glenohumeral bursa with lateral extension to only 90 degrees without pain and minimal tenderness of the right lateral epicondyle. X-rays of Plaintiff's right shoulder performed in January 2004 revealed minor arthritic changes. Tr. 224.

On April 14, 2005, an MRI of Plaintiff's lumbar spine showed early degenerative changes at the L4-5 level with no focal disk herniation. Tr. 259, 271.

On June 15, 2006, an MRI of Plaintiff's thoracic spine showed mild dextroscoliosis of the mid-thoracic spine. Tr. 238. Dr. Anne Murphy prescribed Ultram, Flexeril, and physical therapy. Tr. 238, 240. 270.

On June 19, 2006, Dr. Murphy again prescribed Ultram and physical therapy. Tr. 266.

On June 21, 2006, Dr. Murphy wrote a letter stating that Plaintiff was under her care. Tr. 269. She indicated that pain medication had been prescribed to treat Plaintiff's intense back strain and that this medication made her extremely drowsy. Dr. Murphy was of the opinion that it would be very difficult for Plaintiff to work while taking these medications. Tr. 269.

In March 2008, Plaintiff was given refills of Lorcet and Flexeril. Tr. 215, 216.

On August 1, 2008, Dr. W. P. Enns completed an Attending Physician's Statement. Tr. 201. He indicated that he had been treating Plaintiff since January 16, 2004, for right glenohumeral bursitis, right lateral epicondyle, and lumbar DDD with pain and radiation. Dr. Enns opined that Plaintiff could not work 8 hours per day 40 hours per week and would likely miss more than four days per month due to the symptoms of her impairments. He also stated that Plaintiff could not use her feet for repetitive movements. Tr. 201.

This same date, Dr. Enns evaluated Plaintiff and noted that she was unable to work due to back pain that radiated into her left leg when she tried to do anything or when she sat for too long in one place. Tr. 213. She also reported some tingling down her leg at times. Dr. Enns prescribed samples of Deplin and Meloxicam to be taken until Plaintiff's pain had subsided for one week. Tr. 213.

In November 2008, Plaintiff reported increased tension and lumbar back ache in the left iliopsoas area (located between the T12 vertebra and the L5). Tr. 210-211.

On February 15, 2009, Dr. Enns noted that Plaintiff was doing her neck exercises as prescribed, but continued to experience problems with tightness and stiffness in her neck. Tr. 273. He performed a high velocity, low impact manipulation that showed much popping, but did make her spine feel some better. Dr. Enns diagnosed Plaintiff with chronic torticollis and refilled her prescriptions for Lorcet, Flexeril, and Buspirone and provided her with samples of Deplin. Tr. 273.

The only other RFC assessments contained in the file were completed by non-examining, consultative doctors who both reviewed only the medical evidence as of March 15, 2008, and concluded that Plaintiff's impairments were non-severe. Tr. 193-195, 196-199.

Given the fact that Plaintiff's prescription medications included Flexeril, Lorcet Plus, Buspirone, and Meloxicam, each capable of causing drowsiness and fatigue and of intensifying the side effects of the other medications, we believe the ALJ should have taken this into consideration prior to determining Plaintiff's RFC. Tr. 116, 143. In 2006, Dr. Murphy indicated that drowsiness would be a problem for Plaintiff, and her medications have not changed since that date. The ALJ contends that the evidence made clear that Plaintiff was noncompliant with

her treatment because she did not take the Meloxicam regulary. We note, however, that the Meloxicam was only prescribed to be taken until she was pain free for one week. There is no indication in the record that she did not take it as prescribed. Further, aside from one indication that she had not been as faithful with her stretching exercises as she had previously been, there is nothing to suggest that Plaintiff was noncompliant. Therefore, we believe the ALJ should have considered restricting Plaintiff regarding work near dangerous machinery, balancing, and driving, which could be dangerous given the combination of medications prescribed to Plaintiff.

In addition, given the fact that objective tests did verify some impairments in Plaintiff's lumbar and thoracic spine, the ALJ should have considered limitations affecting Plaintiff's ability to crouch, crawl, climb, kneel, and/or squat. Accordingly, on remand, the ALJ is directed to reconsider Plaintiff's RFC paying close attention to her impairments and the side effects of medications prescribed to treat those impairments.

We note also that none of the RFC assessments contained in the file are particularly helpful. Dr. Enns's assessment appears to be overly restrictive while the RFC assessments of the non-treating doctors' do not appear to take Plaintiff's impairments or medications into account. As Plaintiff's true work-related restrictions are not evident from the record, we believe that the ALJ should have sought further clarification from Plaintiff's treating doctors, Dr. Murphy and Dr. Enns concerning her limitations and her medications. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) (ALJ has duty to develop record when crucial issues is undeveloped). An ALJ may not substitute his own unsubstantiated conclusion for that of a doctor. *See Ness v. Sullivan*, 904 F.2d 432, 435 (8th Cir. 1990); *Fowler v. Bowen,* 866 F.2d 249,

7

252 (8th Cir. 1989). Therefore, on remand, the ALJ is also directed to develop the record further concerning Plaintiff's true level of impairment. If necessary, a consultative examination should be ordered.

In reviewing the ALJ's decision, it is also apparent that the ALJ places great weight on the fact that Plaintiff's doctor continuously recommended that she stop smoking, but that Plaintiff failed to do so. We note, however, that the record makes clear that Plaintiff was attempting to stop and that she had even cut back to one cigarette per day. Therefore, on remand, it is suggested that the ALJ take this into consideration.

### IV.     Conclusion:

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 15th day of October 2010.

/s/ J. Marschewski
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)